# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Robin Linus Lehner and Donya Tina Lehner,

      Appellants

v.

Aliya Growth Fund LLC – Series X,

      Appellee

Case No.: 2:24-cv-00453-JAD

**Order Affirming Bankruptcy
Court's Ruling**

      Debtors Robin and Donya Lehner appeal United States Bankruptcy Judge Natalie M. Cox's order sustaining creditor Aliya Growth Fund LLC–Series X's objection to their invocation of Nevada's homestead exemption. Judge Cox held that the Lehners could not apply the homestead exemption to their residence because it was owned by a limited-liability company of which Robin[1] was the sole member, and thus not the property of the estate. The Lehners contend that Judge Cox put too much stock in their sworn schedules admitting that they had no interest in the home and that holding a home in a wholly owned LLC is akin to putting it in a revocable trust so it should be treated the same. They also raise a handful of new arguments never presented to the bankruptcy court. Aliya defends the judge's conclusions. Because I find on de novo review that the bankruptcy court's findings and conclusions were correct, I affirm.

---

[1] Because Robin and Donya Lehner share a last name, I refer to them separately by their first names.

**Background**

**A.      The debtors claimed a homestead exemption in their LLC-owned home.**

When the Lehners filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code in December 2022, they were living in a single-family residence at 9501 Balatta Canyon Court, in Las Vegas, Nevada.[2]  The home had been purchased in November of 2020 by Westridge Property Management LLC, a Delaware limited-liability company, of which Robin was the sole member.[3]  The property was never held in the individual names of the debtors, but the debtors argue that they paid "all mortgage payments, insurance, property taxes, homeowners' association fees, and maintenance for it from their own personal bank accounts," despite Westridge holding title to the property.[4]

In their bankruptcy schedules, the Lehners stated under penalty of perjury that they did not "own or have any legal or equitable interest in any residence, building, land, or similar property" and that the Balatta Canyon property was owned by the LLC.[5]  But they nevertheless recorded a homestead declaration on it[6] and sought to exempt the statutory maximum of $605,000 of the home's equity under Nevada's homestead exemption in Nevada Revised Statutes (NRS) §§ 21.090(1)(l), 115.005, 115.010, and 115.050.[7]  They later conceded that any

---

[2] ECF No. 8 (Appellants' Excerpts of Record ("AER") at 95.

[3] ECF No. 7 at 5; AER 72; ECF No. 9 at 7, n.3.

[4] ECF No. 7 at 7.  The evidence supporting this claim is the declaration of the Chapter 7 Trustee, Robert E. Atkinson, which was filed in support of a motion that was ultimately withdrawn.  *See* AER 94, 176 ("the substantive consolidation motion . . . was withdrawn").

[5] AER 19.  *See also* AER 30 (showing the Lehners' e-signatures under a statement averring that the information in the schedule was true "[u]nder penalty of perjury").

[6] AER 81.

[7] AER 29.

1  exemption would be capped at the lower $378,100 cap set by 11 U.S.C. § 522(p)(1)(A) because

2  the property had been purchased fewer than 1,215 days before the bankruptcy filing.[8]

3

4  **B.    The bankruptcy court sustained the creditor's objection to the homestead exemption because the home was not owned by the debtors.**

5      Creditor Aliya objected to the exemption request, asserting that it is "well established

6  among bankruptcy courts" that a debtor who is the sole member of an LLC can't claim the

7  homestead exemption for property owned by that LLC.[9]  The Lehners relied almost exclusively

8  on the non-binding decision of the United States Bankruptcy Appellate Panel of the Ninth Circuit

9  (BAP) in *In re Caldwell*, in which the court allowed a debtor to claim the exemption for a home

10  that he transferred into an LLC and then into a revocable trust.[10]  Bankruptcy Judge Cox

11  sustained Aliya's objection after briefing and oral arguments.[11]  She found, based on the debtors'

12  repeated and consistent statements under penalty of perjury in their bankruptcy schedules, that

13  the property was owned by the LLC and that the debtors did "not own or have any legal or

14  equitable interest in" it.[12]  She concluded that *In re Caldwell* was materially distinguishable, that

15  an LLC has a separate legal existence from its members who "do not own or hold an interest in

16  the LLC's property,"[13] and that the Nevada Legislature did not intend to extend the homestead

17  exemption to LLC-owned residences.

18

19

20  [8] AER 71, 79.

21  [9] AER 64–70.

22  [10] *In re Caldwell*, 545 B.R. 605, 612 (B.A.P. 9th Cir. 2016).
   [11] AER 171–85.

23  [12] AER 177.
   [13] AER 181.

3

The Lehners appeal that ruling, and their appeal is fully briefed.[14]  Their arguments can be generally organized under three main points: (1) the bankruptcy court misjudged the facts; (2) the judge should have followed *In re Caldwell*; and (3) she erred by failing to take into account the operation of 11 U.S.C. §§541(a)(6) & (7) in her decision.

## Discussion

**A.    This court reviews de novo whether Creditor Aliya rebutted the debtors' presumptively valid homestead-exemption claim.**

The question raised by this appeal is whether the bankruptcy court erred in sustaining Aliya's objection to the Lehners' use of the homestead exemption.  The Lehners maintain that de novo review is appropriate for the bankruptcy judge's "interpretation of [s]tate exemption law and the Bankruptcy Code."[15]  Aliya frames the issue differently, asserting that "whether an item is property of the estate is a question of fact," which is reviewed for clear error.[16]

The Bankruptcy Appellate Panel of the Ninth Circuit has held that a "bankruptcy court's application of state exemption law is a question of statutory construction that is reviewed de novo."[17]  A de novo standard is also applied when evaluating whether property is part of a bankruptcy estate.[18]  So I find that de novo review is the appropriate standard for resolving this appeal, and I thus review this matter without giving any deference to the bankruptcy court's decision.

---

[14] ECF Nos. 7 (opening brief), 9 (answering brief), 16 (reply brief).

[15] ECF No. 7 at 11.

[16] ECF No. 9 at 8.

[17] *In re Anderson*, 613 B.R. 279, 281 (B.A.P. 9th Cir. 2020).

[18] *Id.*

There is some disagreement about which side had the burden of proof below: Aliya insists that the debtors had the burden to prove their entitlement to the exemption,[19] while the bankruptcy judge concluded that the burden fell on Aliya as the objector to prove that the exemption didn't apply.[20]  Because the challenged ruling comes out of a hearing on a claimed exemption under Rule 4003 of the Federal Rules of Bankruptcy Procedure, that rule put the burden on Aliya to rebut by a preponderance of the evidence the presumption that the claimed exemption was valid, as subsection (c) of that rule states that "[i]n any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed."[21] As Ninth Circuit BAPs have summarized, "[a] claim of exemption is presumed valid, and the burden is on the objecting party to prove, by a preponderance of the evidence, that an exemption is improperly claimed."[22]  "If the objector can produce evidence to rebut the presumption of validity, then the burden of production shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is properly claimed."[23]  "The burden of persuasion remains, however, with the objecting party."[24]  So I review this matter de novo to determine whether the parties met these burdens, as the bankruptcy court held.

---

[19] ECF No. 9 at 22.

[20] *See* AER 176 (citing Fed. R. Bankr. P. 4003(c)).

[21]  Fed. R. Bankr. P. 4003(c).

[22] *In re Alexander*, 472 B.R. 815, 821 (B.A.P. 9th Cir. 2012).

[23] *In re Stijakovich-Santilli*, 542 B.R. 245, 254 (B.A.P. 9th Cir. 2015); *see also In re Carter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999) (summarizing the burdens).

[24] *Id*.

**B.      The record established that the home was the property of the LLC, not the debtors.**

The factual foundation for the bankruptcy judge's ruling was her finding, by a preponderance of the evidence, that the Balatta Canyon property was owned by the LLC, not the debtors.[25]  This finding was based on the court's review of the debtors' bankruptcy schedules.[26] The Lehners contend that "the Court read into the Schedules way more than it can and should have. . . ."[27]

But a de novo review of the record leads me to the same finding the bankruptcy court reached.  On February 3, 2023, the Lehners filed their initial schedules of assets and liabilities.[28] In them, they stated under penalty of perjury that they did not "own or have any legal or equitable interest in any residence, building, land or similar property"[29]:

> **Part 1:** **Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**
>
> 1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**
>
> ■ No. Go to Part 2.
> ☐ Yes. Where is the property?

They further represented that the Balatta Canyon property was owned by the LLC[30]:

> Westridge Property Management, LLC: owns 9501
> Balatta Canyon Court, Las Vegas, NV 89144,
> Debtor's residence; property is worth approximately
> $3.25 million, but has a deed of trust in favor of
> South River Capital, LLC in first position in the
> amount of at least $2.787 million, which was due
> and payable in fully by 1/1/23

---

[25] AER 177.

[26] AER 174–77.

[27] ECF No. 7 at 55.

[28] ECF No. 10 (Supplemental Appendix of Record ("SAR")) at 5–85 (SAR 1-81).

[29] SAR 007.

[30] SAR 010.

1   The same representations were made under penalty of perjury in two rounds of amended

2   schedules.[31]  "Although the Ninth Circuit has not decided whether bankruptcy schedules

3   constitute judicial admissions," the Ninth Circuit BAP has "noted that statements in bankruptcy

4   schedules carry evidentiary weight" and observed that "there exists a substantial body of case

5   law holding that statements in schedules amount to binding judicial admissions."[32]  Even if not

6   judicial admissions, these statements—thrice provided under penalty of perjury—are

7   unequivocal proof that the Balatta Canyon property was owned by the LLC, not the debtors.  The

8   publicly recorded property records, of which this court may take judicial notice,[33] further

9   corroborate that fact.[34]  In all, they add up to proof by more than a preponderance of the

10  evidence.

11          The record is also devoid of admissible evidence to refute this finding.  The Lehners

12  stress that the property was really their personal, family home, not some business asset.  They

13  argue that they "lived in it continuously as their residence" and "made all mortgage payments,

14  insurance, property taxes, homeowners' association fees, and maintenance for it from their

15  personal bank accounts."[35]  But there was no evidence of that before the bankruptcy court.  This

16  information was presented in the Chapter 7 Trustee's declaration in support of his motion for

---

18  [31] AER 19, 22 (April 2023 amendment); SAR 105, 108 (May 2023 amendment).

19  [32] *In re Ingrim Fam., LLC*, 2019 WL 2524246, at *5 (B.A.P. 9th Cir. June 18, 2019)
20  (unpublished). *See also Suter v. Goedert*, 396 B.R. 535, 541 (D. Nev. 2008) ("Statements made
    in bankruptcy schedules are executed under penalty of perjury and, when offered against the
    debtor, "are eligible for treatment as [evidentiary] admissions." (quoting *In re Bohrer*, 266 B.R.
21  200, 201 (Bankr. C.D. Cal. 2001))).  *See also In re Greene*, 583 F.3d 614, 625 (9th Cir. 2009)
    (characterizing debtor's representations in the petition as "admissions").

22  [33] *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *abrogated on other grounds by
    Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002); Fed. R. Evid. 201(b)(2).

23  [34] *See* ECF No. 9 at 14 n.3.

    [35] ECF No. 7 at 15.

substantive consolidation.[36]  That motion was withdrawn by stipulation,[37] so the affidavit was no longer in the record by the time of the hearing on Aliya's objection to the Lehners' homestead exemption, and it is not properly before this court for consideration now.

The Lehners also explain in their briefing that the only reason they held this asset in an LLC was that Robin was a professional athlete and they were trying to protect their privacy and keep from getting "doxed."[38]  But this, too, was not in the bankruptcy-court record,[39] and attorney "arguments in briefs are not evidence."[40]  The net result is that the unrefuted evidence in the record before the bankruptcy judge showed that the Balatta Canyon home was the property of Westridge Property Management, LLC, a Delaware LLC, from its initial purchase in 2020 through the bankruptcy proceeding, and the bankruptcy court did not err in so finding.

**C.    Creditor Aliya met its burden to show that the homestead exemption did not apply to the Balatta Canyon property.**

Various exemptions help debtors shield assets from creditors in the bankruptcy process. The homestead exemption is one such protection.[41]  Nevada has opted out of the federal bankruptcy exemptions and enacted its own homestead exemption,[42] which is available only for the "amount of equity in the property held by the claimant" up to $605,000.[43]  Section 522(p)(1)

---

[36] AER 94.

[37] AER 151.

[38] ECF No. 7 at 12.

[39] *Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015).

[40] *See* ECF No. 9 at 32 n.25; ECF No. 16 at 33.

[41] *See generally In re Greene*, 583 F.3d 614 (9th Cir. 2009) (providing a detailed history of Nevada's homestead exemption and its relationship to 11 U.S.C. § 522).

[42] *See* Nev. Rev. Stat. § 21.090(3); Nev. Rev. Stat. § 115.010(1).

[43] Nev. Rev. Stat. § 115.010(2).

of the bankruptcy code reduces that amount down to the federal cap of $189,050 per person if the home was acquired within the 1,215 days preceding the bankruptcy filing.[44]  Because the Balatta Canyon property was purchased fewer than 1,215 days before the Lehners filed their Chapter 7 petition, they ultimately sought to claim the federal exemption amount, not the state amount.[45]

As the United States Supreme Court said in *Owen v. Owen*, "[n]o property can be exempted . . . unless it first falls within the bankruptcy estate"; "an interest that is not possessed by the estate cannot be exempted."[46]  When people "file for bankruptcy protection, their property interests become the property of the bankruptcy estate" by operation of 11 U.S.C. § 541(a).[47]  The crux of the dispute here is whether the Balatta Canyon property falls within the Lehners' bankruptcy estate given that both Delaware and Nevada law recognize that property in the name of an LLC is owned by the LLC, not by the members of the LLC.[48]  Aliya argues that "it is well settled . . . that an LLC member filing for bankruptcy does not result in the property of that LLC becoming property of the LLC members' bankruptcy estate."[49]  The Lehners contend that *In re Caldwell* supports their claimed exemption because it "held that the debtor did not cease being a householder in his residence merely because it was titled for a time in his wholly owned and

---

[44] 11 U.S.C. §§ 522(p)–(q).

[45] AER 71 ("Debtors . . . concede the amount of their homestead exemptions are respectively limited to $189,050.00 each, for a total equity cap of $378,100.00" in their opposition to Aliya's objection below).

[46] *Owen v. Owen*, 500 U.S. 305, 308 (1991) ("No property can be exempted . . . unless it first falls *within* the bankruptcy estate.").

[47] *In re Gagow*, 590 B.R. 517, 520 (Bankr. D. Nev. 2018).

[48] *See* 6 Del. C. § 18-101(10); Nev. Rev. Stat. § 86.201(3) ("A limited-liability company is an entity distinct from its managers and members.").  *See also* ECF 7 at 38 (wherein debtors concede in their opening brief that "when a debtor who owns an interest in an LLC files for chapter 7 bankruptcy, only the debtor's membership interest in the entity, and not the entity's specific assets, technically become property of the individual's bankruptcy estate").

[49] ECF No. 9 at 28.

controlled LLC."[50]  Plus, because Robin was the sole member of the LLC, which gave him the ability to control the disposition of its lone asset—this house—the LLC was more akin to a trust, and it deserves the same legal treatment.[51]

### 1. The bankruptcy court did not err in distinguishing this case from _In re Caldwell_.

To begin with, the debtors read too much into the non-binding _In re Caldwell_ decision. The procedural postures of the cases are materially different.  The Caldwells purchased their home in their own names in 1994, and over the next 20 years transferred it seven times: in and out of a trust in which they were the sole trustees, and also into an LLC in which they were the sole members.[52]  The last transfer was from the LLC to the trust 1,061 days before the Caldwells filed their bankruptcy petition.[53]  So the home was held in trust at the time of the bankruptcy filing, and it was undisputed that it was the property of the debtors and thus part of the estate. Instead, the dispute was whether they could claim the full state exemption amount (then $550,000) or were capped at the lower federal amount "due to the transfer from the LLC to the trust within the 1,215-day period prior to the petition date."[54]

The Caldwells argued that the transfers of title in and out of the LLC were not true ownership changes because they "always retained a beneficial and equitable interest in the property. . . ."[55]  Mr. Caldwell testified that the transfers were made for estate-planning purposes

---

[50] ECF No. 7 at 46.

[51] _Id_. at 47.

[52] _In re Caldwell_, 545 B.R. at 607.

[53] _Id_.

[54] _Id_. (cleaned up).

[55] _Id_.

only and on advice of counsel and financial advisors.[56]  He presented evidence that they

"continuously resided in the" home for more than 20 years and had "paid the mortgage, taxes,

and insurance."[57]  "The record show[ed] that the interest" that Mr. Caldwell retained in the home

"after the transfer of legal title to the LLC was more than a general interest or the mere right to

exclusive possession" because "[a]ccording to the record, he retained all the indicia of ownership

by his possession and use of the property along with the payment of the mortgage, taxes, and

insurance," and the equity in the property "was the result of payments made by Debtor over the

years."[58]  Those facts, the panel stressed, were not controverted.[59]

The panel noted that "Nevada law does not distinguish between the types of interests in

property that qualify for the homestead exemption" and surmised that it "cannot be limited to

only fee simple title."[60]  It then concluded that the interest that the Caldwells enjoyed was

significant enough to qualify for the exemption.[61]  The panel reasoned that Congress could not

have intended to limit "a debtor's homestead exemption where, as here (1) debtor purchased the

property in 1994, well before the start of the 1,215-day period, (2) continuously possessed and

occupied the property as his homestead, and (3) accumulated the 'equity' by making regular

mortgage payments throughout his occupancy."[62]  So it held "that the transfer of title from the

---

[56] *Id*. at 608.

[57] *Id*. at 610.

[58] *Id*. at 612.

[59] *Id*.

[60] *Id*. at 611–12.

[61] *Id*. at 612.

[62] *Id*. (cleaned up).

1  LLC to the Trust did not constitute an 'interest' that was 'acquired' by Debtor to limit his

2  homestead claim, within the meaning of § 522(p)(1)."[63]

3        Assuming without deciding that the *Caldwell* panel correctly interpreted and applied

4  Nevada's homestead law, I decline to follow its reasoning or conclusions because the record here

5  lacks its key factual elements.  The Lehners never owned the Balatta Canyon property; it was

6  purchased by the LLC less than 1,215 days before the bankruptcy filing and was never

7  transferred to or from the Lehners personally.  The Lehners did not homestead the residence until

8  six months after filing their bankruptcy petition.[64]  And while there is *attorney argument* in the

9  record about the Lehners' continued possession and occupation of this home; the payment of the

10  mortgage, taxes, and insurance on it; and the reasons the Lehners bought and kept the asset in the

11  name of the LLC, there is no *evidence* of this.  What the record shows without dispute is instead

12  that the Lehners considered the home to be the real property of the LLC, not themselves.[65]  So

13  the Lehners did not show that their situation deserved the generous application of the homestead

14  exemption that the BAP extended to the Caldwells, and the bankruptcy court did not err by

15  declining to follow the *In re Caldwell* non-binding holding.

16        **2.**    ***The law treats LLC holdings and trust assets differently.***

17        The debtors' argument that holding the Balatta Canyon property in the LLC is no

18  different than holding it in a trust, so it should be treated the same, overlooks the reality that

19  trusts and LLCs are fundamentally different entities.  Westridge Property Management LLC was

20  organized under the laws of Delaware.  Under Delaware's LLC act, "a limited-liability company

21

22  ―――――――――――――――
[63] *Id.*

23  [64] AER 81–82 (Declaration of Homestead recorded on 6/22/23).

[65] *See supra* at § B.

interest is personal property.  A member has no interest in specific limited-liability company property."[66]  Thus, LLC property is owned by the LLC, not its members, so members "hold no direct ownership interest in the [LLC's] assets."[67]  In stark contrast, "property transferred to or held in a revocable inter vivos trust is considered to remain with the settlor because 'any interest of other beneficiaries is purely potential and can evaporate at the settlor's whim.'"[68]  And while Nevada law explicitly provides that a conveyance of homesteaded property to a trust does not extinguish the homestead,[69] there is no comparable recognition for LLCs.[70]  These distinctions explain why homestead exemptions are allowed for residences held in a revocable trust[71] but

---

[66] 6 Del. C. § 18–701 (cleaned up); *see also Matter of CES 2007 Tr.*, 2025 WL 1354268, at *7 (Del. Ch. May 2, 2025) (holding that because "[a] member has no interest in specific limited-liability company property . . . ,the Trust, through its membership interest in the LLCs, has no interest in the specific real estate owned (or no longer owned) thereby").  Nev. Rev. Stat. § 86.201(3) similarly provides that "[a] limited-liability company is an entity distinct from its managers and members."  Nev. Rev. Stat. § 86.351(1) adds that "[t]he interest of each member of a limited-liability company is personal property."

[67] *Albers v. Guthy-Renker Corp.*, 92 F. App'x 497, 499 (9th Cir. 2004) (unpublished).  *See also Razaghi v. Razaghi Dev. Co., LLC*, 2023 WL 6393287, at *4 (D. Nev. Sept. 30, 2023) ("Under Nevada law, members of a limited-liability company . . . have no direct ownership interest in the LLC's assets.").  The same is true under Delaware law.  *See* 6 Del. C. § 18–701 ("A member has no interest in specific limited-liability company property." (cleaned up)).

[68] *Lopez v. Lopez*, 541 P.3d 117, 123 (Nev. Ct. App. 2023); *Wishengrad v. Carrington Mortg. Servs.*, 529 P.3d 880, 886 (Nev. 2023) (noting that trustees "hold legal title" and the beneficiaries "are the equitable owners" of real property held in a revocable trust).

[69] *See* Nev. Rev. Stat. § 115.020(5) ("The rights acquired by declaring a homestead are not extinguished by the conveyance of the underlying property in trust for the benefit of the person . . . who declared it.").

[70] The fact that the Nevada Legislature carved out an exemption for conveyances to trusts in Nev. Rev. Stat. § 115.020(5) but did not do the same for transfers to LLCs when adopting Chapter 86 suggests that the lawmakers did not intend to grant the same protections to LLCs.  *See Harvey v. State*, 473 P.3d 1015, 1019 (Nev. 2020) ("We follow 'the maxim expression unius est exclusion alterius, the expression of one thing is the exclusion of another.'") (quoting *State v. Javier C.*, 289 P.3d 1194, 1197 (Nev. 2012)).

[71] *See, e.g.*, *In re Kester*, 493 F.3d 1208, 1209 (10th Cir. 2007) (holding that debtors were entitled to the homestead exemption although legal title to the home was held by family's

1  countless courts have rejected the exemption for homes held in the name of an LLC in which the

2  debtor is the sole member.[72]  If the Lehners' goal was to make the Balatta Canyon property their

3  personal asset, they chose the wrong asset-holding vehicle.

4      The debtors' plea to treat this LLC like a trust interest is not persuasive.  Presumably,

5  they had the same opportunity that Caldwell did to move their property into a revocable trust or

6  some other ownership vehicle before filing their bankruptcy petition.  But for whatever reason,

7  they didn't.  "Individuals who transfer assets to corporations, limited-liability companies, or

8  similar entities know there are benefits and drawbacks to doing so.  One obvious potential

9  benefit is limited liability.  There may also be tax, accounting, and estate planning advantages.

10  Among the drawbacks, however, is the fact that the individual no longer owns the assets."[73]  As

11  the Seventh Circuit explained in *Fowler v. Shadel* when consoling the proprietor of a small

12  trucking company who was denied an exemption to shield his truck from creditors because the

13  vehicle's title was held by a corporation in which Fowler was the sole shareholder:

14

---

15  revocable trust); *accord In re Weilert*, 2016 WL 3771905, at *9 (B.A.P. 9th Cir. July 8, 2016)
16  (unpublished) (applying California law).

[72] *See, e.g.*, *In re Breece*, 487 B.R. 599 (B.A.P. 6th Cir. 2013) (collecting cases and holding that
17  debtor's sole membership in LLC did "not grant her any specific interest in the real property," so
   the property was not property of the debtor's estate, and she was "not entitled to claim" a
18  homestead exemption (cleaned up)); *In re Kimball*, 667 B.R. 487, 490 (Bankr. N.D. Ga. 2025)
   (holding that real property titled in the name of debtor's wholly owned, administratively
19  dissolved LLC was not property of the estate); *In re Villavicencio*, 635 B.R. 486, 494 (Bankr.
   S.D. Ohio 2022) (holding that debtor's "interest in the LLC did not give him an exemptible
20  interest in" its real property); *In re Coenen*, 487 B.R. 539, 541 (Bankr. W.D. Wis. 2012) ("Assets
   that are owned by a non-debtor third party, even a solely owned business entity, do not become
21  property of estate.  Although the estate includes the membership and ownership of the LLC, it
   does not include the assets owned by the LLC.  Those assets do not become property of the
22  debtor's bankruptcy estate.  This is consistent with the general principle that bankruptcy
   protections are intended for the benefit of debtors and not third-party entities, even wholly
23  owned third parties." (cleaned up)).

[73] *In re Hess*, 618 B.R. 13, 19 (Bankr. D.N.M. 2020) (cleaned up).

14

> We follow in the footsteps of the bankruptcy court and the district court in expressing our sympathy to Fowler for the consequences of this holding, which will apparently deprive him of the use of the truck by which he generates most of his income. This result apparently could have been avoided by liquidating the corporation before filing for bankruptcy. As the matter stands now, we cannot breathe life into an equitable interest that followed the shares of stock, and so must AFFIRM the holding of the district court.[74]

In sum, Aliya met its burden to rebut the presumed validity the Lehners' homestead exemption, and it proved by a preponderance of the evidence that the exemption was not properly claimed. Even if Nevada law recognizes a homestead exemption for a property interest that is less than fee simple, this record does not support the finding or conclusion that the Lehners' interest qualified. And the weight of authority rejects the use of the exemption for homes owned by limited-liability companies. So the bankruptcy court did not err in sustaining Aliya's objection.

**D.    The debtors' new § 541(a) arguments relating to a potential for proceeds from a hypothetical sale of the property were waived because they were not raised below.**

For the first time on appeal, the debtors assert that the Balatta Canyon property is the property of the estate and thus subject to the homestead exemption because proceeds from an eventual sale of the home would constitute estate property under 11 U.S.C. §§ 541(a)(1), (2), (6), and (7).[75] The debtors criticize the bankruptcy judge's decision for "not account[ing] for" the operation of these statutory provisions.[76] Although these are the lead arguments in the debtors' opening brief, they were not raised below.[77]

---

[74] *Fowler v. Shadel*, 400 F.3d 1016, 1019 (7th Cir. 2005).

[75] *See* ECF No. 7 at 31–37.

[76] *Id.*

[77] *See* AER 71–79 (debtors' opposition to Aliya's objection).

"A litigant may waive an issue by failing to raise it in a bankruptcy court."[78]  While a reviewing court has discretion to consider new arguments if there are exceptional circumstances, the Ninth Circuit has identified just three exceptional circumstances: (1) to prevent a miscarriage of justice; (2) a change in the law; or (3) the new issue is a purely legal one and any necessary factual record is already developed.[79]  None of these exceptional circumstances is present here, so I deem these arguments waived and decline to consider them.  But even if I were to address them on their merits, I would find that they fail because the debtors don't support them with any authority that shows that courts have applied—or can apply—these provisions to transform a real-estate asset of an LLC into the asset of the LLC member–debtor.

### Conclusion

IT IS THEREFORE ORDERED that the bankruptcy court's order sustaining Aliya Growth Fund, LLC – Series X's objection to Robin and Donya Lehners' claimed homestead exemption is **AFFIRMED**, and the Lehners' appeal **is DENIED.**

The Clerk of Court is directed to **ENTER JUDGMENT for Appellee Aliya Growth Fund LLC – Series X and against Appellants Robin Linus Lehner and Donya Tina Lehner, and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
October 3, 2025

---

[78] *In re Mortgage Store, Inc.*, 773 F.3d 990, 998 (9th Cir. 2014).
[79] *Id.*